**DAVID B. JONELIS, ESQ. (BAR NO. 265235)**
**JAKE A. CAMARA, ESQ. (BAR NO. 305780)**
**LAVELY & SINGER PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
djonelis@lavelysinger.com
jcamara@lavelysinger.com

Attorneys for Plaintiff
JAMES HUNTSMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HUNTSMAN, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR FRAUD** |
| vs. | |
| | **DEMAND FOR JURY TRIAL** |
| CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; and Does 1-10, | |
| Defendants. | |

1

COMPLAINT

Plaintiff James Huntsman ("Plaintiff"), through his attorneys at Lavely & Singer Professional Corporation, hereby asserts the following Complaint against Defendant Corporation of the President of The Church of Jesus Christ of Latter-Day Saints (hereinafter, the "LDS Corporation," or "Defendant") and Does 1-10 (collectively, "Defendants"):

## **INTRODUCTION**

*"If we accept salvation on the terms it is offered to us, we have got to be honest in every thought, in our reflections, in our meditations, in our private circles, in our deals, in our declarations, and in every act of our lives."* [1]

– Brigham Young

1.      Had the LDS Corporation heeded these profound words by the esteemed former leader of the Church of Jesus Christ of Latter-Day Saints (the "Church"), this case would never have been filed.  It is only because the LDS Corporation (the corporate arm of the Church) dishonestly and fraudulently placed its own commercial financial interests above the loyalty and well-being of the Church's most devout members, including Plaintiff James Huntsman, that it now finds itself the defendant in this legal action. While the Church is obviously entitled to its religious beliefs (which Mr. Huntsman is not challenging through this lawsuit), the LDS Corporation is not entitled to defraud the Church's congregation.  Consequently, *this is not a case about faith; it is a case about fraud and corporate greed.*

2.      For decades, in a fraudulent effort to elicit the donation of tithing funds from Mr. Huntsman and other devout Church members, the LDS Corporation repeatedly and publicly lied about the intended use of those funds, promising that they would be used for purely non-commercial purposes consistent with the Church's stated priorities – namely, to fund missionary work, member indoctrination, temple work, and other educational and charitable activities.  Behind the scenes, however, rather than using tithing funds for the

---

[1]  https://www.churchofjesuschrist.org/study/manual/gospel-principles/chapter-31-honesty

COMPLAINT

1    promised purposes, the LDS Corporation secretly lined its own pockets by using the

2    funds to develop a multi-billion dollar commercial real estate and insurance empire that

3    had nothing to do with charity.

4        3.    The LDS Corporation's misrepresentations to Mr. Huntsman and the

5    Church's other members concerning the intended use of tithing funds were numerous and

6    well-documented.  Indeed, the LDS Corporation repeatedly and specifically

7    misrepresented that tithing funds would not be used for the commercial development of

8    the City Creek Mall, a for-profit shopping center in downtown Salt Lake City Utah, or for

9    the bailout of a failing private insurance company, Beneficial Life Insurance.

10       4.    These misrepresentations, repeated publicly by the LDS Corporation and its

11   agents, over and over again for a period of nearly two decades, were outright lies.  As Mr.

12   Huntsman only recently discovered, the LDS Corporation actually spent an estimated

13   *$1.5 Billion* of money donated by the Church's members to develop the City Creek Mall

14   alone (while simultaneously reassuring the Church's congregation that no tithing funds

15   whatsoever were used in development of that project).

16       5.    As the overwhelming evidence will show, the LDS Corporation defrauded

17   Mr. Huntsman out of millions of dollars by falsely misleading him into believing his

18   tithings would be used solely for charitable pursuits around the world – when in fact, his

19   money (alongside the donations of other similarly-defrauded Church members) was

20   brazenly and offensively used to build a commercial shopping mall and bail out a failing

21   private insurance company.

22       6.    In reliance on the LDS Corporation's repeated misrepresentations

23   concerning the use of his tithing funds, Mr. Huntsman donated millions of dollars to the

24   corporation over the course of more than two decades.  All the while, Mr. Huntsman was

25   expressly and repeatedly promised and taught by the leaders of the LDS Corporation (at

26   every level within the organization) that his funds would not be used for commercial

27   endeavors, yet the corporation did just the opposite.

28

COMPLAINT

7.      The conduct of the LDS Corporation constitutes *prima facie* fraud under California law, and, make no mistake, the Church's status as a religious organization does not give its corporate arm *carte blanche* to defraud the Church's members and the general public.

8.      To be clear, this case is neither an inquiry into nor a criticism of the religious tenets and beliefs of the Church. Mr. Huntsman has the utmost respect for the members of the Church, and likewise respects their beliefs and customs. Indeed, for almost his entire life, Mr. Huntsman was a devout and faithful member of the Church, taking on leadership roles and dedicating his time and resources to what he believed to be the Church's righteous mission. Clearly, however, the LDS Corporation failed to treat Mr. Huntsman with the same respect.

9.      Through this action, Mr. Huntsman seeks to recover his tithing funds that were fraudulently obtained by the LDS Corporation.   He will then use the recovered funds to benefit organizations and communities whose members have been marginalized by the Church's teachings and doctrines, including by donating to charities supporting LGBTQ, African-American, and women's rights.  Unlike the LDS Corporation, Mr. Huntsman is confident that these charities will actually use his donations for their intended purposes.

## THE PARTIES

10.     Plaintiff James Huntsman is a California resident who regularly conducts business in this state.

11.     Upon information and belief, Defendant LDS Corporation is a corporation duly organized and operating pursuant to the laws of the State of Utah, but also doing business in this state at all relevant times.

12.     Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 10, inclusive. Defendants Does 1-10 are fictitious names used to identify individuals and/or entities who received, misappropriated, and/or fraudulently obtained Plaintiff's property. Plaintiff

4

1    is informed and believes on that basis alleges that each fictitious defendant was in some

2    way responsible for, participated in, or contributed to, the matters and things of which

3    Plaintiff complains herein and in some fashion has legal responsibility therefor. When the

4    exact nature and identity of such fictitious defendants' responsibility for, participation in,

5    and contribution to, the matters and things herein alleged is ascertained by Plaintiff, he

6    will seek to amend this Complaint and all proceedings herein to set forth the nature of

7    these defendants' identities.

8                              **JURISDICTION AND VENUE**

9           13.    This Court has subject matter jurisdiction over this action under 28 U.S.C.

10   §1332, as the parties are completely diverse in citizenship and the amount in controversy

11   exceeds $75,000.00, exclusive of costs and interest.

12          14.    Exercise of jurisdiction over Defendants is reasonable and proper because

13   Defendants have had extensive contacts with the State of California including the

14   unlawful and fraudulent acts alleged in this Complaint.

15          15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a

16   substantial portion of the acts and omissions alleged herein to have been committed by

17   Defendants occurred within this District.

18                          **ALLEGATIONS COMMON TO ALL CLAIMS**

19                              ***The LDS Corporation's Fraud***

20          16.    Throughout much of his life, James Huntsman was a devout and dedicated

21   member of the Church, donating his time, energy, money, and resources in support of the

22   Church's charitable pursuits throughout the world – ***or so he thought***.  Each year from

23   1993 to 2017, Mr. Huntsman paid a yearly tithing to the LDS Corporation equal to 10%

24   of his annual income, which ultimately amounted to millions of dollars in supposed

25   charitable contributions.  Mr. Huntsman also held numerous leadership and teaching

26   assignments within the Church in an effort to support the Church and its purportedly

27   righteous mission.

28

COMPLAINT

17.     Beginning in 2003, and unbeknownst to Mr. Huntsman and other members of the Church's congregation, the LDS Corporation began its campaign of lies and deceit, soliciting billions of dollars from Church members under the guise of charitable contributions.  Falsely promising that it would use tithing funds solely for charitable pursuits around the world and in order to help those most in need of financial assistance, the LDS Corporation fraudulently induced Huntsman to continue paying his yearly tithings.  However, instead of using the funds for charitable purposes as promised, the LDS Corporation brazenly misappropriated Mr. Huntsman's funds to – of all things – ***build a commercial shopping mall and bail out a private insurance company***.

18.     The LDS Corporation's fraudulent misrepresentations concerning the intended use of tithing funds have been continuous, well-documented, and have spanned nearly two decades. Specifically, since at least 2003, the leaders of the LDS Corporation have repeatedly assured the Church's members (and the general public) that tithing funds would not be used to fund any commercial profit ventures, including specifically the construction of the City Creek Mall. For example, at the Church's General Conference in April 2003, President Gordon B. Hinckley announced the following in regard to the City Creek Mall:

> "I wish to give the entire Church the assurance that ***tithing funds have not and will not be used to acquire this property*** [City Creek Mall]. Nor will they be used in developing it for commercial purposes."[2]

19.     Shortly thereafter, at a press conference on October 8, 2003 concerning the development of the City Creek Mall, Presiding Bishop H. David Burton ***doubled down*** on the LDS Corporation's misrepresentations, stating:

> "***None of this money comes from the tithing of our faithful members***… That is not how we use tithing funds."[3]

---

[2] https://www.churchofjesuschrist.org/study/general-conference/2003/04/the-condition-of-the-church
[3] https://www.churchofjesuschrist.org/study/ensign/2003/12/news-of-the-church/church-to-move-campuses-invest-in-salt-lake-city-redevelopment

COMPLAINT

20.     Unfortunately, the LDS Corporation's lies did not stop there. In fact, *in the Church's own official magazine* dated December 2006, the LDS Corporation *tripled down* on its misrepresentations, writing:

> "The Church first announced three years ago it was planning to redevelop the downtown area to energize the economy of the city that houses its headquarters and to bolster the area near Temple Square. *No tithing funds will be used in the redevelopment*."

21.     Continuing its fraudulent scheme, in a 2007 statement to DeseretNews, the LDS Corporation once again lied to the public concerning the source of funding for the City Creek Mall:

> "*Money for the project is not coming from LDS Church members' tithing donations*. City Creek Center is being developed by Property Reserve Inc., the church's real-estate development arm, *and its money comes from other real-estate ventures*."[4]

22.     And yet again, in 2012, the LDS Corporation *for the fifth time* lied about its intentions concerning tithing donations. Keith B. McMullin, who for 37 years served within the Church's leadership and headed a Church-owned holding company, Deseret Management Corp., unequivocally misrepresented to the public (via a quote in *The Salt Lake Tribune*) that tithing funds had not been and would not be used for commercial purposes:

> "McMullin said *not one penny of tithing* goes to the church's for-profit endeavors. Specifically, the church has said *no tithing went toward City Creek Center*."[5]

23.     On information and belief, at the time Mr. McMullin's statement was made, he had already issued checks from the LDS Corporation's accumulation of tithing

---

[4] https://www.deseret.com/2007/3/27/20009045/downtown-renovation-project

[5] https://archive.sltrib.com/article.php?id=54478720&itype=cmsid

COMPLAINT

1  principal for use in connection with the City Creek Mall development and the Beneficial

2  Life Insurance bailout.

3       24.    All the while, Mr. Huntsman reasonably relied on the consistent and

4  continuous representations made by LDS Corporation officials, continuing to annually

5  donate what added up to millions of dollars in what he believed to be religious and

6  charitable contributions.

7       25.    The LDS Corporation's well-documented and continuous misrepresentations

8  aside, its fraudulent intent is further exemplified by its own after-the-fact attempt to

9  change the fine print in its tithing forms. In particular, prior to 2012, the Church's tithing

10  form plainly stated that "all donations" to the Church's missionary fund were to be used

11  "at the Church's sole discretion in ***its missionary program***." But then, in 2012, having

12  already spent millions of dollars in tithing funds for purposes unrelated to the

13  "missionary program" (namely, the City Creek Mall and Beneficial Life Insurance), the

14  LDS Corporation discretely modified the fine print of the Church's tithing forms to state

15  that "reasonable efforts" would be made to use the funds to "***further the Church's***

16  ***overall mission***." While it appears that the LDS Corporation intended to cover its tracks

17  after-the-fact, such efforts nonetheless ran directly counter to the Church's own published

18  teachings regarding the "Definition and Purpose of Tithing," which state:

19
20  > "Tithing funds are always used for the Lord's purposes—to build and
   > maintain temples and meetinghouses, to sustain missionary work, to educate
21  > Church members, and to carry on the work of the Lord throughout the
   > world."
22

23       26.    As a matter of common sense, misappropriating tithing funds to construct a

24  commercial shopping mall and/or bail out a failing insurance company cannot in any way

25  be interpreted to fall within the Church's stated purpose in the tithing forms, and certainly

26  fails to comport with the Church's published teachings regarding the purpose of tithings.

27

28

COMPLAINT

1

*Mr. Huntsman's Discovery of The LDS Corporation's Fraud*

2   27.   In December 2019, Mr. Huntsman discovered the LDS Corporation's fraud

3   via an IRS whistleblower complaint filed by David A. Nielsen, a former senior portfolio

4   manager of Ensign Peak Advisors (LDS Corporation's investment division).  Mr. Nielsen

5   bravely lifted the veil on the LDS Corporation's fraudulent financial activity, publicly

6   alleging that $2 billion from Ensign Peak Advisors has been misappropriated over the

7   past decade to bail out Beneficial Life Insurance and construct City Creek Mall. All the

8   while, the LDS Corporation had repeatedly and publicly represented to its members and

9   the general public that tithing funds ***would not*** be used to do just that.

10   28.   Moreover, Mr. Nielsen, having personal knowledge of the Church's

11   finances, disclosed for the first time that the LDS Corporation's investment division had

12   not directly funded any religious, educational or charitable activities ***in over 22 years***.

13   29.   After learning of the LDS Corporation's fraud and realizing that his tithings

14   had been solicited under false pretenses, Mr. Huntsman repeatedly approached the

15   corporation and demanded the return of his donations.  However, the LDS Corporation

16   refused, effectively taking the position that it could do whatever it wanted with tithing

17   funds, irrespective of its prior representations that the funds would not be used for the

18   development of a shopping mall or any other purely commercial purpose.

19   30.   Faced with a corporation unwilling to take accountability for its false

20   promises and fraudulent misrepresentations, Mr. Huntsman has regrettably been forced to

21   seek recourse in the court system.  Hopefully this lawsuit will put an end to the LDS

22   Corporation's lies and deceit once and for all so that the Church can refocus its attention

23   and efforts on following the path of righteousness and honesty paved by its former

24   leaders.

25   **FIRST CLAIM FOR RELIEF**

26   **(Fraud)**

27   31.   Plaintiff repeats and realleges each and every allegation contained in

28   paragraphs 1 through 30 of the Complaint as if set forth in full herein.

9

1    32.    As alleged, in order to induce Plaintiff to contribute millions of dollars in
2 tithing payments, Defendants promised, agreed, confirmed and made various
3 representations and warranties to Plaintiff concerning the use of the tithing funds.

4    33.    Defendants' promises and representations made to induce Plaintiff's
5 monetary contributions, included, without limitation, the following:

6    • President Gordon B. Hinckley's 2003 statement at the Church's April
7    General Conference that "***tithing funds have not and will not be used to***
8    ***acquire this property*** [City Creek Mall]. Nor will they be used in
9    developing it for commercial purposes."

10   • Presiding Bishop H. David Burton's October 8, 2003 representation that
11   "***none of this money [for the City Creek Mall] comes from the tithing of***
12   ***our faithful members.***"

13   • The Church's December 2006 representation in its own official magazine
14   that "***no tithing funds will be used in the redevelopment***" of the City
15   Creek Mall.

16   • The Church's March 2007 statement to the press that "***money for the***
17   ***project [City Creek Mall] is not coming from LDS Church members'***
18   ***tithing donations***."

19   • Keith B. McMullin's October 2012 statement to the press that "***not one***
20   ***penny of tithing*** goes to the church's for-profit endeavors" and that "***no***
21   ***tithing went toward City Creek Center***."

22   34.    At the time the foregoing representations were made by Defendants, they
23 were false, and Defendants knew them to be false, in that, Defendants (1) did not intend
24 to use Plaintiff's tithing funds solely for charitable and religious purposes and (2)
25 intended to, and had devised a calculated scheme to, misappropriate Plaintiff's tithing
26 funds to purely commercial endeavors, including the construction of City Creek Mall and
27 the bailout of Beneficial Life Insurance.

28

COMPLAINT

1    35.    Defendants fraudulently concealed that they intended to use Plaintiff's

2  tithing funds for purely commercial purposes, including the development of City Creek

3  Mall and the bailout of Beneficial Life Insurance.

4    36.    Defendants also fraudulently misrepresented that Plaintiff's tithing funds

5  would specifically not be used for the development of the City Creek Mall or the bailout

6  out of a private insurance company, among other fraudulent representations and

7  concealment.

8    37.    At the time the foregoing representations were made, Defendants knew the

9  true facts and made such misrepresentations and/or concealed such information

10 intentionally, with the knowledge that Plaintiff would rely upon such fraudulent

11 misrepresentations, and that Plaintiff would be induced thereby to donate millions of

12 tithing funds to the Church.

13    38.    At the time Defendants' representations were made, Plaintiff was unaware of

14 the true facts and justifiably relied on Defendants' misrepresentations and concealment in

15 contributing millions of dollars in tithings to the Church.  Had Plaintiff known the true

16 facts, he would not have, among other things, made those contributions.

17    39.    Plaintiff reasonably relied on Defendants fraudulent misrepresentations and

18 as a result thereof, was induced to act, or not act, to his detriment, as herein alleged.

19    40.    As set forth above, Plaintiff did not discover Defendants' fraudulent

20 misrepresentations and concealments until the publication of the whistleblower complaint

21 filed in December 2019, well within three years of the commencement of the litigation

22 herein.  Due to Defendants' closely guarded financial dealings, Plaintiff could not

23 reasonably have discovered the fraud at an earlier date.

24    41.    By reason of the foregoing, Plaintiff has been injured in an amount which is

25 not yet fully ascertainable but which is in excess of $5,000,000.  When Plaintiff has

26 ascertained the full amount of his damages, he will seek leave of the Court to amend this

27 Complaint accordingly.

28

11

COMPLAINT

42. Plaintiff is informed and believes and based thereon alleges that the Defendants, and each of them, in doing the things herein alleged, acted willfully, maliciously, oppressively and with full knowledge of the adverse effects of their actions on Plaintiff, and with willful and deliberate disregard to the consequences to Plaintiff, and that such actions were authorized, ratified and adopted by the partners, officers, directors and/or managing agents of Defendants.  As a direct result of the fraudulent, willful and malicious conduct of Defendants, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined as appropriate to the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For an award of general and special damages against Defendants, and each of them, in an amount not yet fully ascertainable but in an amount not less than $5,000,000, in accordance with proof at trial, together with interest thereon at the legal rate;

2. For exemplary and punitive damages pursuant to Civil Code §3294 in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of such damages subject to proof at trial;

3. For costs of suit incurred;

4. For interest at the maximum statutory rate; and

5. For such other and further relief as the Court deems just and proper.

Dated:  March 22, 2021

LAVELY & SINGER, P.C.
DAVID B. JONELIS
JAKE A. CAMARA

By:   /s/ David B. Jonelis
        DAVID B. JONELIS
Attorneys for Plaintiff
JAMES HUNTSMAN

12

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3         Plaintiff demands a trial by jury.

4

5    Dated:  March 22, 2021                     LAVELY & SINGER, P.C.
                                               DAVID B. JONELIS
6                                              JAKE A. CAMARA

7

8
                                          By:   /s/ David B. Jonelis
9                                                  DAVID B. JONELIS
                                          Attorneys for Plaintiff
10                                         JAMES HUNTSMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT