**DAVID B. JONELIS, ESQ. (BAR NO. 265235)**
**JAKE A. CAMARA, ESQ. (BAR NO. 305780)**
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
djonelis@lavelysinger.com
jcamara@lavelysinger.com

Attorneys for Plaintiff
JAMES HUNTSMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HUNTSMAN, | CASE NO.:  2:21-cv-02504 SVW (SK) |
| Plaintiff, | Assigned to the Hon. Stephen V. Wilson, Ctrm. 10A |
| vs. | |
| CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; and Does 1-10, | **DECLARATION OF DAVID A. NIELSEN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

1

I, DAVID A. NIELSEN, declare as follows:

1. The facts stated herein are stated of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. From 2010 until 2019, I worked for a company called Ensign Peak Advisors, Inc. ("EPA"). EPA is an entity that was established to invest money on behalf of The Church of Jesus Christ of Latter-day Saints (the "Church.")

3. My position at EPA was Senior Portfolio Manager. Among my responsibilities was managing all aspects of the Emerging Market Debt fund (portfolio as large as ~$800mm net asset value at one point), among other things.

4. In my position at EPA, I had scores of meetings, both formal and informal, with Roger Clarke (EPA's President and Managing Director), Robert Nydegger (EPA's former Head of Fixed Income and later its Chief Investment Officer ("CIO"), Richard Willes (Head of Fixed Income), Michael Connors (Head of Fixed Income), and other persons at EPA. Through these meetings and other communications with EPA's senior leadership, and my own responsibilities at EPA, I obtained an understanding of EPA's operations.

5. According to what the senior leadership of EPA informed me, in 1997 EPA was formed and was seeded with tithing money from the Church.

6. During my employment at EPA, EPA's senior leadership and other EPA employees referred to and revered all funds of EPA as "tithing" money, regardless of whether they were referring to principal or earnings on that principal. In addition, during my time at EPA, tithing donations from the Church's members were commingled with earnings that EPA had made. Every penny was referred to as the "widow's mite."

7. While I was at EPA, EPA's funds were administered by a committee known as the Council on the Disposition of the Tithes (the "Council"). The Council was responsible for approving any distributions and/or withdrawals of the tithing funds maintained by EPA.

2

8.     Based on statements made by EPA senior leadership including in the meeting described below, over a five-year period, the Council approved EPA's withdrawal of approximately $1.4 billion in tithing funds to pay for the commercial development of the City Creek Mall.   The Council likewise approved EPA's withdrawal of $600 million in tithing funds to bail out a company called Beneficial Life Insurance Company.

9.     In March 2013, I attended a meeting led by EPA senior leadership. EPA's President Roger Clarke, along with Robert Nydegger, gave a presentation in which they described, among other things, the various ways that EPA had been distributing and/or withdrawing its tithing funds, including in connection with the City Creek Mall and Beneficial Life Insurance Company.  Mr. Clarke used a presentation that included what is attached as Exhibit "A," a true and correct copy of a slide from that presentation titled "Ensign Peak & Portfolio Purposes."   This slide presented by Mr. Clarke includes, among other things, "Examples of withdrawals" that include:

> "City Creek: $1,400mm over 5 years"
>
> "Beneficial Life: $600mm in 2009"

10.     Before this March 2013 meeting led by EPA's President Roger Clarke described above, I and other employees of EPA with whom I spoke were aware of public statements by the Church that no tithing funds would be used for City Creek Mall or other for-profit businesses.  When Mr. Clarke made the presentation described above using Exhibit A, I and possibly other EPA employees present asked how the Church's public statements about no tithing funds being used for City Creek Mall or Beneficial Life could be consistent with Mr. Clarke's description of how EPA had made "withdrawals" for "City Creek: $1,400mm over 5 years" and "Beneficial Life: $600mm in 2009."  Mr. Clarke responded that two other Church-affiliated entities (Property Reserve, Inc. and Deseret Management Corporation) had received from EPA the $1.4 billion and $600 million, respectively, paid by EPA for City Creek Mall and Beneficial

Life, and essentially that, as a result, people would not know EPA was the source of this funding to City Creek Mall and Beneficial Life. Mr. Clarke stated that it was important that people should not know EPA's role as the source of the funds.

11.    After that March 2013 meeting described above, Mr. Clarke's presentation and the statements on Exhibit A prompted additional discussions among EPA personnel of whether EPA's funding of City Creek Mall and Beneficial Life with approximately $2 billion in EPA tithing funds could somehow be reconciled with the Church's public statements that no tithing funds were used for City Creek Mall or Beneficial Life.  Again, all of EPA's funds were tithing funds and were treated by EPA as tithing funds; every penny was "the widow's mite."  Based on Mr. Clarke's statements described above of which I have personal knowledge, it appeared the Church's public statements were intended to conceal the truth about EPA's use of tithing funds for City Creek Mall and Beneficial Life.

[SIGNATURE APPEARS ON NEXT PAGE]

DECLARATION OF DAVID A. NIELSEN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    I declare under penalty of perjury under the laws of the United States of America

2  and the State of California that the foregoing is true and correct.

3    Executed this _15_ day of August, 2021, at _Annapolis, Maryland_ .

4

5                                                      DAVID A. NIELSEN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DAVID A. NIELSEN IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT A

# Ensign Peak & Portfolio Purposes

## The Role of Ensign Peak Advisors

- Balance wealth growth and preservation of principal
- Maintain adequate liquidity for Church operations & investment flexibility
- Add incremental return through active management
- Maintain cost-effective & secure operations
- Produce accurate & timely reports
- Provide investment alternatives and education to affiliated entities & presiding councils
- Comply with appropriate legal & regulatory conditions
- Avoid investments or activities that would detract from the mission of the Church

## Purpose of the investment reserve is to support the following:

- Prophetic initiatives
- Budget supplement
- Backstop the pension plan
- Backstop the taxable entities
- Collateral for Church purposes

## Examples of withdrawals are*:

- Conference Center: $0mm; funded out of budget
- Proliferation of temples: $0; funded out of budget
- City Creek: $1,400mm over 5 years
- Beneficial Life: $600mm in 2009
- Pension / Other: $0mm; underfunded
- Collateral: ~$200mm for church entities

\* *The draw on the investment reserves has been relatively small due to the conservative nature of Church finances and operations – i.e. a balanced budget. This is a very strong first line of defense. Furthermore, over the past several years, approximately $1bn has been granted to EPA on an annual basis.*

8