1  Rick Richmond (SBN 194962)
   *rrichmond@larsonllp.com*
2  Matthew S. Manacek (SBN 312834)
   *mmanacek@larsonllp.com*
3  Nathaniel S. Wright (SBN 325061)
   *nwright@larsonllp.com*
4  Troy S. Tessem (SBN 329967)
   *ttessem@larsonllp.com*
5  **LARSON LLP**
   555 South Flower Street, Suite 4400
6  Los Angeles, California 90071
   Telephone:(213) 436-4888
7  Facsimile: (213) 623-2000

8  Attorneys for Defendant
   THE CHURCH OF JESUS CHRIST OF
9  LATTER-DAY SAINTS

10

11              UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14  JAMES HUNTSMAN,                    Case No. 2:21-cv-02504 SVW (SK)

15          Plaintiff,                 *Assigned to the Hon. Stephen V. Wilson, Ctrm. 10A*

16          vs.                        **DECLARATION OF RICK RICHMOND IN SUPPORT OF**
17  CORPORATION OF THE                 **DEFENDANT'S OPPOSITION TO**
    PRESIDENT OF THE CHURCH OF         **PLAINTIFF'S MOTION TO**
18  JESUS CHRIST OF LATTER-DAY         **STRIKE THE DECLARATION OF**
    SAINTS; and Does 1-10,             **ROGER CLARKE**
19
            Defendants.               *[Filed concurrently with Defendant's*
20                                     *Opposition to Plaintiff's Motion to*
21                                     *Strike the Declaration of Roger Clarke]*

22                                     Trial Date:       None Set

23

24

25

26

27

28

LARSON LLP
LOS ANGELES

DECLARATION OF RICK RICHMOND IN SUPPORT OF DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION TO STRIKE THE DECLARATION BY ROGER CLARKE

**<u>DECLARATION OF RICK RICHMOND</u>**

I, Rick Richmond, declare as follows:

1.      I am a partner with Larson LLP, attorneys of record for Defendant The Church of Jesus Christ of Latter-day Saints.  I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.      I make this declaration in support of the Church's Opposition to Plaintiff's Motion to Strike the Declaration of Roger Clarke.

3.      On June 28, 2021, an initial status conference was held in Courtroom 10A before the Honorable Stephen V. Wilson.  A true, correct, and authentic copy of the transcripts of those proceedings are attached hereto as **Exhibit A**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 31st day of August, 2021, at Los Angeles, California.

/.s/ Rick Richmond
Rick Richmond

LARSON LLP
LOS ANGELES

DECLARATION OF RICK RICHMOND IN SUPPORT OF DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION TO STRIKE THE DECLARATION BY ROGER CLARKE

# EXHIBIT A

1               UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3               HONORABLE STEPHEN V. WILSON

4            UNITED STATES DISTRICT JUDGE PRESIDING

5                         - - -

6
   James Huntsman,                     )
7                    PLAINTIFF,        )
                                       )
8  VS.                                 )   NO. CV 21-2504 SVW
                                       )
9  Corporation of the President of the)
   Church of Jesus Christ of Latter-Day)
10 Saints, et al.,                     )
                     DEFENDANT,        )
11 _____)

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15               LOS ANGELES, CALIFORNIA

16              MONDAY, JUNE 28, 2021

17

18

19        _____

20            KATIE E. THIBODEAUX, CSR 9858
              U.S. Official Court Reporter
21                   Suite 4311
                  350 West 1st Street
22               Los Angeles, CA  90012

23

24

25

```
 1    APPEARANCES OF COUNSEL:

 2


 3    FOR PLAINTIFF:

 4         LAVELY AND SINGER PC
           BY:  DAVID BINDER JONELIS
 5         -and- JAKE ANTHONY CAMARA
           2049 Century Park East
 6         Suite 2400
           Los Angeles, CA  90067
 7


 8


 9    FOR DEFENDANT:

10         JENNER AND BLOCK LLP
           BY:  RICH LLOYD RICHMOND
11         633 West 5th Street
           Suite 3600
12         Los Angeles, CA  90071

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; MONDAY, JUNE 28, 2021

 2                           3:42 P.M.

 3                           - - - - -

 4

 5

 6         THE CLERK:  James Huntsman versus Corporation of

 7   the President of the Church of Jesus Christ of Latter Day

 8   Saints, et al.

 9         MR. JONELIS:  Good afternoon, your Honor.  David

10   Jonelis of Lavely and Singer on behalf of plaintiff James

11   Huntsman, and my colleague Jake Camara is also here on

12   behalf of James Huntsman.

13         THE COURT:  Who appeared for the defendant?

14         MR. RICHMOND:  I am here, your Honor.  Rick

15   Richman with the Law Firm of Jenner and Block for the

16   defendant.

17         THE COURT:  So I have somewhat of the outline of

18   the dispute, and this is the initial status conference.

19   It is informal and just to give the court some sense of

20   what the litigation is about and where it is going.

21             Let me ask the plaintiff some questions.

22   Mr. Jonelis.  Did I say your name correctly?  Jonelis?

23         MR. JONELIS:  That's correct, your Honor.

24         THE COURT:  When did your client first learn that

25   his contribution, as he alleges, was not used for the --
```

```
 1    was used for commercial purposes and not for religious

 2    purposes.  That is his essential contention; correct?

 3          MR. JONELIS:  In a nutshell, the answer to your

 4    question, your Honor, is December, 2019, and it is not a

 5    nonreligious purpose.  It was a for-profit purpose, your

 6    Honor.

 7          THE COURT:  I see.  So the way you are making the

 8    distinction is as long as his money was not used for a

 9    for-profit purpose, it was within the ambit of his

10    understanding of the contribution?

11          MR. JONELIS:  Generally, your Honor, yes.

12          THE COURT:  And so he learned in you say December

13    of 2019?

14          MR. JONELIS:  Correct, your Honor.

15          THE COURT:  And how did he learn that?

16          MR. JONELIS:  There was a whistleblower complaint,

17    your Honor -- this is paragraph 40 our complaint alleges

18    this -- that was filed by another gentleman not my client

19    that asserted a laundry list of alleged concealments by

20    the church including the events that we have alleged in

21    our complaint.

22          THE COURT:  So the basis of this complaint are the

23    allegations in the whistleblower complaint?

24          MR. JONELIS:  No, your Honor.  The allegations

25    here stem from -- it is much narrower than what is in the
```

```
 1   whistleblower complaint.  The whistleblower complaint is

 2   what blew the whistle on the fact that tithing funds were

 3   allegedly being used for profitable purposes.

 4              My client then looked at some of that and

 5   noticed that some of it was towards a mall, the City

 6   Creek mall that the church in numerous representations

 7   had said funds were not being used for and also to bail

 8   out --

 9        THE COURT:  Say that again.  I missed what you

10   just said.

11        MR. JONELIS:  I'm sorry.  There were

12   representations made by the church that tithing funds

13   were not being used to fund the construction of the City

14   Creek mall.

15        THE COURT:  And where were those representations

16   made?

17        MR. JONELIS:  There were made in numerous public

18   forums, newspaper, church publications.

19        THE COURT:  But was this -- you said that in

20   your -- the plaintiff says defendant made these

21   statements in 2006, '7 and '12.  Tithing funds were not

22   used for the City Creek Center project.  Why did the

23   church even have to make that statement?  I mean, was it

24   controversial?

25        MR. JONELIS:  My understanding is it wasn't at the
```

```
 1   time.  It was just a matter of fact that we are happy to

 2   do this.  The first statement was in April, 2003, your

 3   Honor.  That we want to give the entire church the

 4   assurance that tithing funds have not and will not be

 5   used to acquire this property.  I don't know why the

 6   rationale was to make that statement.

 7         THE COURT:  Why did it even surface?  I mean, was

 8   it known that the -- I understand this mall or whatever

 9   is close to the church itself, but was there some issue

10   about whether the church had some involvement in this

11   shopping center?

12         MR. JONELIS:  To my knowledge, no, your Honor.

13         THE COURT:  Then why was the church even making

14   these statements?

15         MR. JONELIS:  Your Honor, that would be a question

16   that we will seek the answer to through deposition of the

17   PMK.

18         THE COURT:  So, in other words, your client

19   continued to make payments over the years thinking that

20   the statement was accurate?

21         MR. JONELIS:  That's correct, your Honor.

22         THE COURT:  All right.  Let me get to the church

23   now.  Let me hear the church's view of the dispute.

24         MR. RICHMOND:  Yes, your Honor.  In terms of

25   timing, counsel is correct.  The first statement was
```

1    in --

2         THE COURT:  Are you at the microphone there?

3         MR. RICHMOND:  I thought I was.  Is that better,

4    your Honor?

5         THE COURT:  Yes.

6         MR. RICHMOND:  The first statement was in April,

7    2003, and the complaint has a snippet of the statement.

8    Our answer has a longer version of the statement, and,

9    so, the answer to your question is exactly this:

10         Quote, "I call attention to that which has

11   received much notice in the local press.  This is our

12   decision to purchase the shopping mall property

13   immediately to the south of Temple Square."

14         And he explains why.

15         "We feel we have a compelling responsibility

16   to protect the environment of the Salt Lake Temple.  The

17   church owns most of the ground on which this mall stands.

18   The owners of the buildings have expressed a desire to

19   sell.

20         "The property needs very expensive and

21   extensive renovation.  We felt it imperative to do

22   something to revitalize this area, but I wish to give the

23   entire church the assurance that tithing funds have not

24   and will not be used to acquire this property nor will

25   they be used in developing it for commercial purposes.

 1   Funds for this have come and will come from those

 2   commercial entities owned by the church.  These resources

 3   together with the earnings of invested reserve funds will

 4   accommodate this program," closed quote.

 5        THE COURT:  So it seems like at least one of your

 6   positions is that tithing funds were not used to purchase

 7   this mall or its improvements.

 8        MR. RICHMOND:  That is exactly correct, your

 9   Honor.

10        THE COURT:  And that the funds for the purpose the

11   purchase and improvements came from the income from

12   commercial investments that the church already had.

13        MR. RICHMOND:  Correct, your Honor.

14        THE COURT:  But where did those other commercial

15   investments come from?  In other words, is there any

16   allegation that the plaintiff in this case, that the

17   tithings of the plaintiff in this case were used to

18   purchase the commercial assets whose profits were used to

19   purchase and improve the mall in question.

20        MR. RICHMOND:  That is not in the complaint, your

21   Honor, but, in general terms, obviously, there will be

22   more complication to it, but, in general terms, it is as

23   if -- you can consider this to be like any charitable or

24   nonprofit organization or foundation.

25             Let's say there is an endowment or there is

```
 1   some accumulation of funds to begin with which is the

 2   corpus and maybe that corpus doesn't get touched and the

 3   earnings on various investments from that, whatever those

 4   investments might be, whether it be stocks, bonds, real

 5   estate, life insurance, whatever, then it is the earnings

 6   in many organizations that are nonprofit or charitable

 7   organizations, but the earnings are able to be spent over

 8   time and leave the corpus intact.  So here that is

 9   essentially what we have.

10        THE COURT:  So your position -- is your position

11   supportable on a summary judgment standard?

12        MR. RICHMOND:  Absolutely, your Honor.  And I

13   propose that we put the case into a position so that I

14   can make that summary judgment motion both for this

15   purpose on the fraud claim -- it is a single count fraud

16   complaint -- but, also, to keep to the side all the first

17   amendment issues under the church autonomy doctrine that

18   under principles of long-standing restraint, et cetera,

19   the court can and should leave the First Amendment issues

20   to the side as much as possible so that we can decide the

21   case on just the fraud elements.

22        THE COURT:  I think that is a good suggestion,

23   but, just as sort of a point of interest, how would the

24   First Amendment issue surface in a case like this?

25        MR. RICHMOND:  I think it is most likely to
```

1    surface in discovery, your Honor.  For example, if what

2    we are talking about was there a corpus of funds that the

3    church had and were there earnings on those funds in

4    these years in question and were the earnings sufficient

5    to pay for this City Creek project.  The answer to all

6    those questions is going to be yes.

7                 So if they go any further beyond that and they

8    want to start taking depositions of church leaders about

9    why do you spend your money in this way, why do you spend

10   your money that way, why do you invest the money this

11   way, shouldn't you really be spending more money on

12   missionary activities, shouldn't you be spending the

13   money to feed the poor, shouldn't you spend the money to

14   build temples.

15                Whatever it is, you, then, are clearly

16   encroaching on the area protected by the church autonomy

17   doctrine which says, essentially, churches, synagogues,

18   mosques, whatever the religious organization is, have

19   broad autonomy to collect and spend funds in the way that

20   they wish and it is not up to the courts to come in and

21   try to second guess how they do that.

22        THE COURT:  Mr. Jonelis, do you have any objection

23   to testing the waters with a summary judgment motion?

24        MR. JONELIS:  No, your Honor.  But the issue would

25   be in order to do that, as Mr. Richman has correctly

1    stated, the fundamental evidence that we would need to

2    see is more than just the church's representation that

3    there is a corpus and then there is profits.  We would

4    seed to see the documents that support it.

5           THE COURT:  I assume that at least in that regard

6    there will be supporting documents.

7           MR. RICHMOND:  Correct, your Honor.

8           THE COURT:  So when will you be able to file your

9    motion, Mr. Richman?

10          MR. RICHMOND:  I need two or three things in

11   discovery, your Honor.  I need a deposition of the

12   plaintiff, and I need some of the documentation that he

13   has indicated in his initial disclosures that he has

14   because the summary judgment motion will be targeted not

15   just to whether the representations are true or not based

16   on the theory I was just discussing but also how much

17   tithing did he pay, when did he pay it, did he pay it in

18   reliance on these statements or not.

19          THE COURT:  Well, if you get into that, I mean,

20   will you be disputing that the tithings were not made in

21   reliance on the statement?

22          MR. RICHMOND:  Correct.

23          THE COURT:  Well, that doesn't seem like it is a

24   summary judgment issue.

25          MR. RICHMOND:  I know it doesn't seem like it, and

```
 1   I sure don't want you to prejudge it based on my little

 2   bit of comments here.  But the answer is the way tithing

 3   is paid and the way it is settled up on an annual basis,

 4   I think the answer is yes that there will be a reliance

 5   problem.  But since we are in federal court --;

 6        THE COURT:  So when do you think you will be

 7   prepared to make your summary judgment motion?

 8        MR. RICHMOND:  With no deposition of the

 9   plaintiff?

10        THE COURT:  Let's say you get that.

11        MR. RICHMOND:  Then we can do it promptly, your

12   Honor.  Within a month of the deposition.

13        THE COURT:  So give me a date.

14        MR. RICHMOND:  One month after the deposition,

15   assuming we get the documentation from his side for what

16   tithing he has said he has paid, if I can get those two

17   things, in one month, I will file for summary judgment.

18        THE COURT:  Why can't that be done in the next two

19   weeks?

20        MR. JONELIS:  []It could, your Honor.

21        MR. BOYLE:  Then I will say that will be done in

22   the next few weeks, the documents, the deposition, and

23   the summary judgment motion should be filed six weeks

24   from today.  Six weeks from today, the filing of the

25   summary judgment motion.
```

1          THE CLERK:  The motion would be filed on

2   August 9th.  The opposition would be due August 16th.

3   The reply would be August 23rd.  With hearing on

4   August 30th at 1:30.

5          THE COURT:  All right.  Thank you.

6          MR. RICHMOND:  Thank you, your Honor.

7          THE COURT:  And I always like to set a trial date

8   promptly, but I will await until the hearing on the

9   summary judgment motion to set a trial date if necessary.

10  I will be better informed at that point.

11         MR. RICHMOND:  Thank you.

12         MR. JONELIS:  Thank you, your Honor.

13         (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2

 3

 4   I hereby certify that pursuant to Section 753, Title 28,

 5   United States Code, the foregoing is a true and correct

 6   transcript of the stenographically reported proceedings held

 7   in the above-entitled matter and that the transcript page

 8   format is in conformance with the regulations of the

 9   Judicial Conference of the United States.

10   Date:  July 1, 2021

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```